UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Case No. 23-cr-203 (SRN/TNL) |
| Plaintiff, | |
| v. | REPORT & RECOMMENDATION |
| Curtis Lee Ferguson, | |
| Defendant. | |

Esther Soria Mignanelli and Joseph Scott Teirab, Assistant United States Attorneys, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415; and Ben Tonkin, Trial Attorney, U.S. Department of Justice, 1301 New York Avenue Northwest, Washington, DC 20005 (for the Government); and

Aaron J. Morrison, Assistant Federal Defender, Office of the Federal Defender, 300 South Fourth Street, Suite 107, Minneapolis, MN 55415 (for Defendant).

## I. INTRODUCTION

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on Defendant Curtis Lee Ferguson's Motion to Suppress Statements, ECF No. 49. This motion has been referred to the undersigned for a report and recommendation to the district court, the Honorable Susan Richard Nelson, District Judge of the United States District Court for the District of Minnesota, under 28 U.S.C. § 636 and D. Minn. LR 72.1.

The parties agreed to waive the hearing on this motion and have it decided on the papers. ECF No. 59 at 1. The parties further agreed that Government Exhibit 1, containing body cam footage from the events in question, would be received by the Court

without objection. ECF No. 59 at 2. Briefing is now complete, and this motion is ripe for a determination by the Court. *See* ECF No. 59 at 2-3.

## II. FINDINGS

Based upon the file and documents contained therein, along with the exhibit presented, the undersigned Magistrate Judge makes the following findings.

On the morning of January 4, 2023, law enforcement executed a search warrant on a residence. Conservatively, there appears to have been at least four squad cars, one tactical vehicle, one ambulance, two other law-enforcement vehicles, and a dozen officers involved, several of them who were visibly armed and in tactical gear. Gov't Ex. 1 at 0:00-1:08. It had snowed heavily and was continuing to snow. *See generally* Gov't Ex. 1.

At the time the police officer whose body cam footage was submitted as Government Exhibit 1 arrived on scene, Defendant was standing next to the residence, illuminated, speaking with and receiving commands from law enforcement to walk towards them. Gov't Ex. 1 at 0:44-1:05. After a respectful and cordial exchange, wherein Defendant expressed, and law enforcement acknowledged, his concerns for safety, Defendant was instructed to walk towards law enforcement and informed that he would be placed "in a car" and law enforcement would then "search the place." Gov't Ex. 1 at 1:06-30; *see also* Gov't Ex. 1 at 1:37-44. Law enforcement also told Defendant that he could pick up his dog and bring her with him. *See* Gov't Ex. 1 at 1:56-58, 2:20-59.

It was decided that Defendant would go with this police officer and the officer instructed Defendant to come towards him.  Gov't Ex. 1 at 2:21-45.  While Defendant was complying with law enforcement and walking towards the officer, the officer asked Defendant his name and whether his dog was friendly.  Gov't Ex. 1 at 2:21-45.  As he made contact with Defendant, the officer asked Defendant "who else was in the house." Gov't Ex. 1 at 2:43-47.  Defendant responded that his brother was still in the house along with at least one other man.  Gov't Ex. 1 at 2:46-3:14.  Another police officer was directed to take Defendant's dog and put her in a squad car.  Gov't Ex. 1 at 2:52-3:02.

The police officer in charge of Defendant then proceeded to handcuff him.  Gov't Ex. 1 at 3:03-25.  The officer did not state that Defendant was being placed under arrest. Unprompted and while he was being handcuffed, Defendant stated that there was one weapon in the house.  Gov't Ex. 1 at 3:17-19.  Defendant stated that the other individuals did not know where it was and that he would tell the officer its location.  Gov't Ex. 1 at 3:22-25; *see* Gov't Ex. 1 at 3:32-34.  Defendant subsequently made other incriminating statements regarding the firearm.  *See, e.g.*, Gov't Ex. 1 at 3:47-4:02, 4:33-55.  During the encounter, the officer asked Defendant if he was "still drunk" from the night before. Gov't Ex. 1 at 6:01-05.  Later, the officer remarked that Defendant appeared to be intoxicated.  *See, e.g.*, Gov't Ex. 1 at 6:43-47 ("super drunk," "hammered drunk"); *see also*, *e.g.*, Gov't Ex. 1 at 33:54-34:07, 50:47-51:05, 1:22:56-23:01.  Law enforcement subsequently recovered a firearm in the basement of the residence.  *See* Gov't Ex. 1 at 40:57-42:07.

### III. ANALYSIS

Defendant moves to suppress the statements he made on January 4 to law enforcement as violative of his Fifth Amendment rights.[1] Defendant asserts that he was taken into custody[2] from the moment he exited the residence and not provided with the requisite warnings under *Miranda v. Arizona*, 384 U.S. 436 (1966), before being questioned by law enforcement. Defendant also asserts that he was extremely intoxicated at the time, thereby rendering his statements involuntary. The Government does not dispute that Defendant was not provided with *Miranda* warnings or that he was intoxicated at the time. ECF No. 50 at 4. Rather, the Government asserts that *Miranda* does not apply because Defendant's statements were not in response to any sort of interrogation.

"The Fifth Amendment provides that no person 'shall be compelled in any criminal case to be a witness against himself.'" *United States v. LeBrun*, 363 F.3d 715, 719-20 (8th Cir. 2004) (quoting U.S. Const. amend. V). "The Fifth Amendment requires that *Miranda* warnings be given when a person is interrogated by law enforcement after being taken into custody." *United States v. Smialek*, 970 F.3d 1070, 1074 (8th Cir. 2020); *accord United States v. Chipps*, 410 F.3d 438, 445 (8th Cir. 2005); *see also Rhode Island v. Innis*, 446 U.S. 291, 297-98 (1980); *Miranda*, 384 U.S. at 444.

"[N]ot all government inquiries to a suspect in custody constitute interrogation and

---

[1] While Defendant moved to suppress statements from both January 4 and January 6, 2023, *see generally* ECF No. 49, the Government previously agreed "to self-suppress the statements made during . . . [D]efendant's in-custody interview on January 6." ECF No. 50 at 3. Accordingly, only the January 4 statements are at issue. *See also* ECF No. 59 at 2.
[2] The Government does not appear to dispute that Defendant was in custody.

4

therefore need be preceded by *Miranda* warnings." *United States v. Tapia-Rodriguez*, 968 F.3d 891, 894 (8th Cir. 2020) (quotation omitted). "Interrogation occurs when a law enforcement officer engages in 'either express questioning or its functional equivalent,' which includes 'any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.'" *United States v. Hernandez-Mendoza*, 600 F.3d 971, 976 (8th Cir. 2010) (quoting *Innis*, 446 U.S. at 300-01); *accord Smialek*, 970 F.3d at 1073. "The 'should have known' standard is objective and 'focuses primarily upon the perceptions of the suspect, rather than the intent of the police.'" *Tapia-Rodriguez*, 968 F.3d at 894 (quoting *Innis*, 446 U.S. at 301).

"[C]ustodial statements made on the suspect's own initiative are not subject to the safeguards of *Miranda*." *Butzin v. Wood*, 886 F.2d 1016, 1018 (8th Cir. 1989); *see also Miranda*, 384 U.S. at 478 ("Volunteered statements of any kind are not barred by the Fifth Amendment . . . ."); *Hernandez-Mendoza*, 600 F.3d at 977 ("Voluntary statements not in response to an interrogation, however, are admissible with or without *Miranda* warnings." (quotation omitted)); *United States v. Withorn*, 204 F.3d 790, 796 (8th Cir. 2000) ("We have repeatedly held that a voluntary statement made by a suspect, not in response to interrogation, is not barred by the Fifth Amendment and is admissible with or without the giving of *Miranda* warnings." (quotation omitted)).

Here, law enforcement did not ask Defendant about the presence of any weapons in the residence, even though they might have been within their rights to do so. *See, e.g.*, *New York v. Quarles*, 467 U.S. 649, 655-56 (1984) (public-safety exception to *Miranda*);

*United States v. Liddell*, 517 F.3d 1007, 1009-10 (8th Cir. 2008). Defendant was only asked who else was in the residence, questioning that cannot, objectively speaking, be said to be reasonably likely to elicit incriminating information under the circumstances, let alone information about the presence of any firearms in the residence and to whom they might belong. Defendant's statements about the firearm in the residence were spontaneous and not the product of any interrogation or its functional equivalent. *See United States v. Crisolis-Gonzalez*, 742 F.3d 830, 836-37 (8th Cir. 2014) (volunteered statement regarding gun under mattress was independent from law enforcement's immigration inquiry); *United States v. Lawrence*, 952 F.2d 1034, 1036 (8th Cir. 1992) ("Here, the police officer did not even mention a gun. Officer Antonson merely asked a few routine identification questions necessary for booking purposes. Lawrence volunteered the statement that he had thrown away a gun while fleeing."); *see also United States v. Howard*, 532 F.3d 755, 761-62 (8th Cir. 2008).

Nor does Defendant's intoxication at the time render his statements involuntary. "Intoxication does not automatically render a confession involuntary; rather the test is whether this mental impairment caused the defendant's will to be overborne." *United States v. Jones*, 842 F.3d 1077, 1083 (8th Cir. 2016) (quotation omitted); *see also Howard*, 532 F.3d at 763 ("Simply because Howard was under the influence of drugs does not automatically render his confession involuntary. Rather, Howard must show his intoxication caused his will to be *overborne*." (citation omitted)). True, the police officer commented on a number of occasions that Defendant appeared to still be intoxicated from the night before. Yet, the body cam footage reflects that Defendant was

6

coherent and spoke in a manner that indicated he understood what was going on, including expressing concern for the safety of those involved. *See Howard*, 532 F.3d at 763. Likewise, Defendant has neither claimed nor pointed to anything "in the record indicating his state of intoxication was so severe that his will was *overborne*." *Id.* (emphasis added).

[Continued on next page.]

## IV. RECOMMENDATION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant Curtis Lee Ferguson's Motion to Suppress Statements, ECF No. 49, be **GRANTED IN PART** as to the January 6 statements and **DENIED IN PART** as to the January 4 statements.

Date: October  6  , 2023                                  *s/ Tony N. Leung*
                                                          Tony N. Leung
                                                          United States Magistrate Judge
                                                          District of Minnesota

                                                          *United States v. Ferguson*
                                                          Case No. 23-cr-203 (SRN/TNL)

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.