UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Curtis Lee Ferguson,<br><br>Defendant. | Case No. 23-cr-203 (SRN/TNL)<br><br>**ORDER** |

Esther Soria Mignanelli, Assistant United States Attorney, United States Attorney's Office, 300 South 4th Street, Suite 600, Minneapolis, MN 55415, and Ben Tonkin, Trial Attorney, United States Department of Justice, 1301 New York Avenue Northwest, Washington, D.C. 20005, for Plaintiff.

Aaron J. Morrison, Assistant Federal Defender, Office of the Federal Defender, 300 South Fourth Street, Suite 107, Minneapolis, MN 55415, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on Defendant Curtis Ferguson's Objection ("Objection") [Doc. No. 65] to Magistrate Judge Tony N. Leung's October 6, 2023 Report and Recommendation ("R&R") [Doc. No. 63]. In his R&R, Judge Leung recommends that the Court grant in part and deny in part Mr. Ferguson's Motion to Suppress Statements ("Motion to Suppress") [Doc. No. 49]. The Government filed a Response ("Response") [Doc. No. 66] opposing the Objection. Based on a review of the files, submissions, and proceedings herein, and for the reasons below, the Court respectfully overrules the

1

Objection, adopts the R&R, and denies as moot in part and denies in part the Motion to Suppress.[1]

## I. BACKGROUND

For purposes of this motion, the Court considers certain evidence received by the Court—that is, Government Exhibit 1 ("Ex. 1"), which contains video from the body-worn camera of one officer who was present for the underlying events.

During the morning of January 4, 2023, Minneapolis police executed a search warrant at a residence. (Ex. 1.) It had snowed heavily that night, and snow continued to fall steadily throughout the incident. *Id.* The responding officer recording the events arrived on the scene at approximately 7:14 a.m. *Id.*

By the time the officer recording the incident arrived, there were at least eighteen law enforcement persons on the scene, many of whom were equipped with assault-style weapons, as well as six vehicles including an armored S.W.A.T. vehicle, an ambulance, marked and unmarked squad cars, and multiple K-9 units. *Id.* at 0:00–1:55. One officer was communicating through a loudspeaker with a person standing just outside the doorway of the residence, who later identified himself as the Defendant, Curtis Ferguson. Mr. Ferguson called out to the officers: "Listen to me, please. We're here, we don't want nobody to get hurt." *Id.* at 1:09–1:12. The officer communicating with him stated: "This is

---

[1] The Government has advised that it will not offer testimony at trial regarding the statements made by Mr. Ferguson on January 6, 2023 [Doc. No. 50]. Accordingly, the Court adopts the R&R with respect to the January 6, 2023 statements without further discussion, and denies the Motion to Suppress as to these statements as moot.

how it's going to go: you're going to walk to me, we're going to put you in a car, we're going to go in and search the place, so come on out." *Id*. at 1:20–1:24.

Mr. Ferguson, holding a dog in his arms, walked out to the officer recording the video, who began speaking to him. *Id*. at 2:20. They had the following exchange:

> Officer: "Is your dog friendly?"
> Ferguson: "Yes."
> . . .
> Officer: "Who else is in the house?"
> Ferguson: "My brother."
> Officer: "Which one?"
> Ferguson: "The one you guys are here for."
> . . .
> Officer: "Okay, he's going to take your dog, and we're going to put you in the back of a police car.
> Ferguson: "My brother's in the house you guys . . . there's someone in there, my brother's in the house . . . there's two other men.

*Id*. at 2:40–3:16. At that point in the exchange, the officer began placing Mr. Ferguson in handcuffs. As he did so, unprompted, Mr. Ferguson stated: "there's one weapon in the house," and "they don't know where it's at." *Id*. at 3:19, 3:24. Mr. Ferguson then offered to tell them where the gun was, at which point the officer said, "alright Mr. Ferguson, let's talk about this in a second, let's walk back here okay?" while leading Mr. Ferguson toward the line of squad cars. *Id*. at 3:26–3:28.

Mr. Ferguson continued to discuss the gun while the officer attempted to conduct a pat down search. *Id*. at 3:34–4:36. As the officer searched him, Mr. Ferguson said "it's in the basement." *Id*. at 3:49. The officer asked, "what is?", to which Mr. Ferguson responded, "the only gun in the house is in the basement." *Id*. at 3:49–3:52. He followed up that "my brother does not know about the gun in the house." *Id*. at 4:02. Mr. Ferguson then mumbled

3

something, to which the officer responded, "no one's going to hurt anyone you got it, you're being cooperative, as long as you guys follow directions everything will be just fine, okay?" *Id*. at 4:09–4:13. The officer clarified the number of people in the house, and then the following exchange occurred:

> Officer: "and the gun's downstairs."
> Ferguson: "there's no gun in the house."
> Officer: "you just said the gun is downstairs."
> Ferguson: "there's no gun in the house"
> Officer: "you just said it's downstairs"
> Ferguson: "no, I didn't."
> Officer (to another officer): "didn't he just say it was in the basement?"
> Officer (to Ferguson): "do you have anything else on you? I don't care about drugs. But I don't want you to—"
> Ferguson: "you know what, honestly, I said that."

*Id*. at 4:34–4:51.

After that exchange, the officer took Mr. Ferguson back to his own squad car. As they walked, the officer asked Mr. Ferguson, "are you still drunk from last night?" *Id*. at 6:03. The officer started laughing and said, "that's a good night, man." *Id*. at 6:04–6:08. Mr. Ferguson replied "no, not last night." *Id*. at 6:09. After placing Mr. Ferguson in the car, the officer told two other responding officers that "he already said he has a gun in the basement . . . he's super drunk. He's hammered drunk." *Id*. at 6:40–6:48.

The officers conducted a full search of the residence, and ultimately found a firearm inside of a sock buried in a basement couch. *Id*. at 40:59–41:49.

## II.   DISCUSSION

Mr. Ferguson objects to the R&R's findings and argues that the statements he made during the morning of January 4, 2023, should be suppressed on two grounds: (1) that he

4

was in custody and was interrogated by law enforcement without receiving a proper warning pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), and (2) that his statements were not voluntary in light of his clear intoxication. The Court reviews the R&R de novo. *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003).

### A. Alleged *Miranda* Violation

Statements made during a "custodial interrogation" are, generally speaking, inadmissible unless the speaker has first been given a *Miranda* warning. *United States v. Becerra*, 958 F.3d 725, 729 (8th Cir. 2020) (citing *Miranda*, 384 U.S. at 444). The Court agrees with Mr. Ferguson, and the Government does not dispute, that when Mr. Ferguson emerged from his house—surrounded by law enforcement officers brandishing firearms and directing him toward a squad car—a reasonable person in the same situation would not have felt free to leave. Accordingly, the Court agrees with the magistrate judge that he was in custody for purposes of *Miranda*. *See United States v. Williams*, 760 F.3d 811, 814 (8th Cir. 2014) (determining custody status for *Miranda* purposes requires inquiring whether, given the totality of the circumstances, a reasonable person would feel free to terminate the interaction and leave). The statements therefore should be suppressed if they were 1) made in response to an interrogation, and 2) not subject to any recognized *Miranda* exception. *See Becerra*, 958 F.3d at 729–30.

After reviewing the entirety of the evidence, the Court finds that Mr. Ferguson's statements were not made in response to any law enforcement interrogation. Spontaneous, unprompted statements that Mr. Ferguson made on his own initiative are not subject to the *Miranda* doctrine. *United States v. Waters*, No. 20-3659, 2022 WL 351194, at *1 (8th Cir.

5

Feb. 7, 2022) (per curiam) (citing *Stumes v. Solem*, 752 F.2d 317, 322–323 (8th Cir. 1985)). The officer's subsequent requests for clarification similarly did not rise to the level of a police interrogation. *Becerra*, 958 F.3d at 729.

On his own initiative, Mr. Ferguson stated that there was "a weapon in the house." He then said that "they don't know where it's at," and "it's in the basement." When an officer asked, "what is?", he replied "the only gun in the house is in the basement." Neither his initial statements, nor anything he said in response to subsequent efforts by law enforcement to clarify them, were originally prompted by police interrogation. Because Mr. Ferguson's statements were not elicited through a custodial interrogation, *Miranda* does not apply.

Even if law enforcement's efforts to clarify the location of the gun were of the type likely to elicit an incriminating response, such that they might rise to the level of an interrogation, they were justified under the public-safety exception to the *Miranda* doctrine. *Becerra*, 958 F.3d at 729–730 (citing *Rhode Island v. Innis*, 446 U.S. 291, 302 (1980)). An answer to a question that, viewed objectively, has the purpose of aiding public safety or the safety of responding officers, may be admitted into evidence even if the suspect has not been informed of his *Miranda* rights. *United States v. Jones*, 842 F.3d 1077, 1082 (8th Cir. 2016). Asking about the presence or location of a weapon falls under the purview of this exception. *See United States v. Elliott*, No. 22-2210, 2023 WL 3746899, at *2 (8th Cir. June 1, 2023); *United States v. Thompson*, 976 F.3d 815, 824 (8th Cir. 2020). Here, the officer's questions to Mr. Ferguson were limited to the location of firearms in the house that they were about to search. These questions were reasonably prompted by a

6

concern for public safety. Accordingly, even if the officer's clarifying questions constituted an interrogation, the answers he received from Mr. Ferguson are admissible. After a de novo review of the evidence, the Court agrees with the magistrate judge that no *Miranda* violation occurred.

### B.     Allegedly Involuntary Statements Made While Intoxicated

Mr. Ferguson also argues that any statements he made during the morning of January 4, 2023 were involuntary on account of his intoxication and therefore must be suppressed. It is settled law, however, that intoxication on its own does not render a statement involuntary; rather, the test is whether the intoxication "caused the defendant's will to be overborne." *Jones*, 842 F.3d at 1083. The Court evaluates whether a defendant's will has been overborne by examining the totality of the circumstances, "including both the conduct of law enforcement in exerting pressure to confess on the defendant and the defendant's ability to resist that pressure." *United States v. Sandell*, 27 F.4th 625, 630 (8th Cir. 2022) (quoting *United States v. Magallon*, 984 F.3d 1263, 1284 (8th Cir. 2021)).

As discussed *supra*, Mr. Ferguson's statements that a weapon was in the house were made spontaneously, without prompting from law enforcement. Mr. Ferguson objects to the R&R's characterization that when he made these statements he was "coherent," noting that the officers themselves described him as "super" and "hammered" drunk. (Objection at 2.) To the extent that Mr. Ferguson appears unsteady and confused during the interaction, it is not clear from the video footage whether that unsteadiness was caused by his intoxication or because he was walking through heavy snowfall surrounded by heavily armed police officers.

What is clear is that Mr. Ferguson told the officers, without prompting, that there was a weapon in the house, that nobody else knew about it, and that it was in the basement. Not only was there an absence of pressure exerted on Mr. Ferguson to confess, the law enforcement officers actually cut him off as he tried to tell them these things, saying "let's talk about that in a second." (Ex. 1 at 3:26.) Mr. Ferguson does not assert that law enforcement in any way coerced his statements regarding the firearm, or that his will was overborne, only that he was intoxicated at the time. Because a statement cannot be found involuntary "unless it is established that law enforcement officials engaged in coercive activity," Mr. Ferguson's argument that his statements were made involuntarily must fail. *United States v. Bordeaux*, 400 F.3d 548, 560 (8th Cir. 2005).

### III. ORDER

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

    **A.**     The Defendant's Objection [Doc. No. 65] is **OVERRULED;**

    **B.**     The Report and Recommendation [Doc. No. 63] is **ADOPTED;**

    **C.**     The Defendant's Motion to Suppress [Doc. No. 49] is **DENIED AS MOOT in Part** with respect to the statements made on January 6, 2023, and **DENIED in Part** with respect to the statements made on January 4, 2023.

**IT IS SO ORDERED.**


Dated: December 1, 2023                    /s/ Susan Richard Nelson
                                                            SUSAN RICHARD NELSON
                                                            United States District Judge